[No. 26152. Department One. February 23, 1937.]

MARIE A. GRANAT, *Respondent and Cross-appellant*, v. HENRY G. GRANAT, *Appellant.*[1]

*A. O. Burmeister, John D. Cochran,* and *Harry Ellsworth Foster,* for appellant.

*Thos. L. O'Leary,* for respondent and cross-appellant.

MAIN, J.—This action, as originally brought, was based upon a written contract, and a money judgment only was sought. The answer contained certain admissions and denials and pleaded three affirmative defenses. The defendant also cross-complained for a divorce decree. The trial resulted in findings of fact, from which it was concluded that the plaintiff was en-

'Reported in 65 P. (2d) 220.

titled to prevail upon the contract and that the defendant was entitled to an absolute divorce from the plaintiff. From the interlocutory decree entered in accordance with the findings and conclusions, both parties have appealed.

Throughout, they will be referred to as plaintiff and defendant. They were married in Vancouver, B. C., July 7, 1928, and, as a result of this marriage, no children have been born. At the time of the marriage, the defendant, who was licensed to practice medicine in Canada, was employed as an interne in the Vancouver General Hospital. Prior to the marriage, the plaintiff had been a teacher in a junior high school in one of the provinces of the Dominion. The mother of the defendant resided in Vancouver, and was a semi-invalid. The mother of the plaintiff resided on a farm in Ontario. After the marriage, the parties resided in Vancouver, where the defendant continued his work as an interne. From time to time after the marriage, there was more or less friction between them, due probably to the fact that the plaintiff appears to have been rather a nagging type of person and the defendant an indifferent one.

The parties lived together in Vancouver until August 10, 1932, when, owing to a disagreement or quarrel that they had had about six weeks previously, they agreed that the plaintiff should go to Ontario and stay with her mother for a time. She says that the understanding was that she was to return at the end of six months. The defendant says that it was understood at the time that "she would go down there and then we would discuss it if she was ready to come back." For a time after the plaintiff went to Ontario, the defendant wrote her very affectionate letters and she responded in a similar way. This correspondence continued, and

after a time the defendant's letters came to be couched in less affectionate and more formal terms.

The plaintiff returned to Vancouver early in January, 1933, and from the train wired the defendant to meet her upon arrival. After receiving this telegram, the defendant caused a relative to meet the plaintiff, and he came to this state to visit a brother who was a practicing physician here. After coming to this state, the defendant went on to Mexico and obtained a divorce there, but upon that decree no reliance seems to be placed at this time. After the defendant came here, early in 1933, he located at Rainier, in Thurston county, where he has since practiced his profession. He is there employed by what is called the Bridge Clinic, which has the medical aid contract with a timber company.

After the plaintiff arrived at Vancouver, she wrote a letter to the defendant, from which she received no answer, even though it was registered. Later, she wrote his brother a letter which, it is said, contained a threat that she would notify the immigration authorities that her husband was illegally in the United States, and would cause his deportation to Canada. As a result, the defendant returned to Vancouver in order that he might make a legal entry into the United States. Before he could pass the immigration officials, it was necessary for him to make provision for the support of his wife, whom he was leaving behind. While there, the plaintiff and defendant entered into a contract by which they agreed to live separate and apart, and that the defendant would, during their joint lives and so long as they should live separate and apart from each other and

" . . . so long as their marriage is not dissolved by the supreme court of British Columbia, pay to the wife the monthly sum of seventy-five dollars ($75) of

lawful money of Canada for her support and mainte-
nance, . . . ''

There was a further provision in the contract that,
should the income of the defendant increase,

'' . . . then in such event the allowance granted
herein to the wife shall be proportionately increased,
such increase in allowance to bear the same proportion
to the increase in income as the present allowance bears
to the present income of the husband. . . . ''

It was upon this contract that the plaintiff brought
the action seeking to recover the amount due and un-
paid upon the contract at the time the action was begun.

██ The first question to be determined is whether
the evidence is sufficient to sustain the interlocutory
decree awarding a divorce. In his testimony, the hus-
band charges the wife with a number of delinquencies:
First, her disapproval of his visiting his invalid mother
as frequently as he did; second, her objection to his
forming a partnership with his brother to practice
medicine; third, opposing his desire to come to the
United States; fourth, denial of sexual relationship;
and, fifth, a note written in June prior to the time that
the plaintiff went to Ontario to stay for a time with her
mother.

All of these things happened prior to that time, some
of them early in the married life of the parties, and
their relations to each other seemed to have improved
as time went on. The mother of the defendant died in
the year 1931. As to the refusal of sexual relations,
this is unequivocally denied by the plaintiff. The trial
court did not make a specific finding upon that charge,
and, as we view the testimony, it is not sustained.

The only other thing to be specifically noticed is the
note, already referred to. As stated, that was a note
written by the plaintiff to her husband immediately
after a quarrel, in which she said that there were but
two ways out; one was for her to go and live with her

mother, which she could not do on account of the humiliation of it, and the other was what the defendant correctly construed as a threat to commit suicide. Apparently, at the time the plaintiff went to Ontario, there was no thought on the part of either of them of getting a divorce. This is definitely made to appear by the letters which the defendant for a time wrote. In the first letter, which was written August 12, 1932, a day or two after the plaintiff had departed, the opening sentence is:

"It seems ages ago since you left—last night. Everything seems unreal without you here. I really don't know how I'll be able to while away the evening hours. . . . "

The concluding sentence of the letter is:

"And now with much love to your mother & the family I'll say nite-nite c (with) X X X X X X X X X X X X X X X X X X X X X X X X

"HENRY."

The last letter, which was written by the defendant to the plaintiff while she was in Ontario, was about November 20, 1932. The first sentence in this letter is as follows:

"Sorry if I'm causing you all this grief; but what else can I do? What isn't in the heart any longer I can't give. It is just as impossible to restore wood from ashes as to do the same c love. . . . "

This letter concludes with the sentence,

"Your goods—all of them—will be left at Crones sometime shortly. And in the meantime God be with you. HENRY."

It will be observed that there is a wide divergence in tone of these two letters, and the record contains the reason for it. After the plaintiff had gone to Ontario, the defendant became interested in a young lady employed in the same hospital where he was an interne.

Since he has been located in this state, according to his own testimony, she has come over to visit him two or three times, the exact number he did not appear to be able to state.

There are two things that are clear. In the first place, the defendant could not get a divorce from his wife in British Columbia, because the only ground therefor is adultery. He, apparently, desired to be free from his wife and came to this state feeling that he could make a showing that would justify the courts here in giving him a divorce. He has not done so. The grounds for a divorce are set out in Rem. Rev. Stat., § 982 [P. C. § 7501], one of which is "cruel treatment of either party by the other, or personal indignities rendering life burdensome." If the evidence will not sustain a decree under this provision, there is no other provision in the statute under which it could come.

Reverting to the letter which contained a threat of deportation, that is of no material consequence, because it was written after the defendant had come to this country without making provision for his wife, which was necessary for him to do before he could be legally admitted. The charges which the defendant makes, and upon which he hopes to get a decree, are not substantial, and, apparently, the defendant did not regard them of any great consequence until after he became interested in the other woman.

The interlocutory decree granting an absolute divorce will be reversed, with direction that the cross-complaint be dismissed.

■ Now, with reference to the contract to which the defendant pleaded three affirmative defenses: (a) Lack of consideration; (b) void as against public policy; and (c) that the signature of the defendant was procured by fraud and duress. In none of these charges

is there any merit. With reference to fraud and duress, it definitely appears, from the defendant's own testimony, that, when he signed the contract, he knew exactly what its terms were and what he was obligating himself to do. The interlocutory decree, in effect, gave the plaintiff a judgment upon this contract for all deficiencies in the payments up to the time the action was brought, and this part of the decree will be affirmed.

In view of the fact that we are of the opinion that the evidence does not sustain that portion of the decree granting a divorce to the defendant, other questions presented are not material.

The cause will be remanded, with directions to the superior court to amend the decree in accordance with the views herein expressed.

STEINERT, C. J., BLAKE, and GERAGHTY, JJ., concur.

MILLARD, J. (dissenting)—I dissent. I am of the view that the court was correct in granting an absolute divorce. I am further of the view that the court erred in sustaining the contract.